IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| VIRGINIA D. DEBEIKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 05-920-KI |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

VIRGINIA D. DEBEIKES
658 Madison Avenue
Vernonia Oregon 97064

    Pro Se

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

1 - OPINION AND ORDER

MICHAEL MCGAUPHRAN
Office of the General Counsel
FRANCO L. BECIA
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104

    Attorneys for Defendant

KING, District Judge:

## INTRODUCTION

Plaintiff Virginia Debeikes brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 1383(c). The Commissioner's decision is affirmed.

## BACKGROUND

Debeikes was born August 31, 1964. She completed high school and two years of college. She worked in the past as a legal secretary and insurance agent. She stopped working when she became a housewife and chose to cease working and stay home to raise her children. Debeikes injured her left foot on March 11, 1999. On her application, Debeikes alleged disability beginning that date due to extreme pain and inflammation. Tr. 75, 286.[1] In testimony and elsewhere, Debeikes alleges impairment from a variety of other conditions, including temporomandibular joint (TMJ) dysfunction, broken foot, broken jawbone, broken elbows, aching head, back and feet, heart problems and fatigue.

---

    [1] Citations to "Tr." refer to the page(s) indicated in the official transcript of record filed with the Commissioner's Answer. (Docket # 8).

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Debeikes challenges the ALJ's evaluation of the evidence and conclusion at the fourth step of the sequential process.

For the purposes of the fourth step, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. §§ 416.920(e), 416.945; Social Security Ruling (SSR) 96-8p.

Here, the ALJ assessed Debeikes's RFC as follows:

> The claimant retains the residual functional capacity to perform light exertional work. . . Non-exertional limitations narrow the range of light exertional work she can do. She is restricted to occasional climbing.

Tr. 17.

At step four the ALJ must determine whether the claimant retains the RFC to perform work she has done in the past. If she remains able to perform her past work, the Commissioner must find that she is not disabled. 20 C.F.R. § 416.920(e).

3 - OPINION AND ORDER

The ALJ in this case determined that Debeikes's past work as a legal secretary and insurance agent did not require work activities precluded by her RFC. Accordingly, he found that she is not disabled or entitled to SSI benefits. He found it unnecessary to reach step five of the sequential process.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Debeikes challenges the ALJ's evaluation of the evidence and conclusion that she retains the ability to perform her past work. She contends he inaccurately assessed her RFC because he failed to fully credit her testimony, give sufficient weight to the results of a bone scan, consider all of her impairments and permit her children to testify as lay witnesses.

### I. Credibility Determination

Debeikes states: "it is beyond me why I have been found to be not credible." The court construes this as a claim that the ALJ failed to provide legally adequate reasons for discrediting her testimony. Debeikes testified that she cannot do her past work because she must keep her foot elevated to table height "all day long and all night long." Tr. 303. She said that it is painful to stand for over five minutes and her back begins to hurt after sitting for 30 minutes. Tr. 301.

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of her symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). *See also Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id*. In addition, the ALJ may employ ordinary techniques of credibility evaluation such as prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. *Id*. 20 C.F.R. § 416.929; SSR 96-7p.

The ALJ considered appropriate factors and made specific findings sufficient to show that he did not reject Debeikes's testimony arbitrarily. He considered all the medical evidence, which included only minimal findings.

Debeikes reported breaking a bone in her foot, but her physician noted that it was "highly suspect" whether she did fracture a bone and that "she seems to be getting along just fine." Tr. 177. MRI and x-ray images of the left foot and ankle showed no evidence of fracture, subluxation or dislocation and the soft tissues of the foot appeared normal. The diagnostic imaging showed degenerative arthritic changes in the ankle. In March 2003, Bart Rask, M.D., performed arthroscopic debridement and there were no complications. Tr. 180, 188, 204, 207.

In March 2004, Debeikes returned to Dr. Rask insisting that the same pain in the left ankle and foot had recurred after some recent stair climbing. Dr. Rask was certain that she was describing a new and different pain. Her ankle joint had full range of motion and she demonstrated full strength. X-rays were negative. Dr. Rask diagnosed a new left ankle strain. Tr. 209.

In April 2004 David Buuck, M.D., performed a physical examination which revealed a normal appearing ankle with normal range of motion, no effusion and only a little tenderness to palpation. Dr. Buuck agreed with Dr. Rask that her x-rays showed no significant bony abnormalities. Tr. 215. A CT scan revealed a small cyst in the talus which did not correlate with the pain Debeikes reported. Dr. Buuck declined Debeikes's requests for surgery to remove the cyst and for a disabled parking sticker. Tr. 214.

Debeikes underwent a nuclear medicine bone scan which showed mild arthritis and a stress fracture of one of the cuneiform bones of the left foot. Tr. 208, 238. Dr. Buuck noted that the location of the stress fracture did not correlate with the pain Debeikes described to him, suggesting that the stress fracture was not the source of her impairment. Debeikes insisted on having a cast and crutches, although Dr. Buuck did not feel she would benefit from this. Tr. 213.

In June 2004 Dr. Buuck removed the cast and noted again that he was not convinced the stress fracture had caused her problem. He opined that her pain had been related to arthritis instead. Debeikes did not report any pain and Dr. Buuck's only functional limitations were that she should not stomp around and should use crutches for a short time until she became accustomed to her shoe again. Tr. 211.

In August 2004 Debeikes complained of recurrent left foot pain. Dr. Buuck noted "she just doesn't appear to be that uncomfortable." Tr. 249. Her physical examination was normal. Diagnostic imaging showed some arthritic changes, but no evidence of fracture or dislocation. Dr. Buuck noted that the "images do not show any significant abnormality" and observed that his clinical findings were benign. Debeikes thought she needed surgery, but Dr. Buuck declined. Tr. 249. Debeikes disagreed and asked her primary care physician for a referral to another doctor. Tr. 247. There is no record of a consultation for a second opinion.

These minimal findings in relation to the severe symptoms alleged could lead the ALJ to reasonably question the accuracy of Debeikes' subjective reporting of symptoms.

In contrast with Debeikes's allegations of extreme physical limitations, the medical evidence does not contain any medical source opinion that imposed work restrictions or functional limitations. Dr. Buuck, the orthopedic specialist "discharged her with a diagnosis of arthritis and no physical limitations." Dr. Clare Green, the primary care physician, did not perform a physical capacities evaluation and declined to offer an opinion regarding disability or specific functional limitations. Tr. 260.

The medical evidence shows that Debeikes received very conservative treatment. Her doctors recommended stretching, exercise and over-the-counter pain medications. They have declined surgical intervention on multiple occasions, noting that it is not warranted.

The medical evidence also includes frequent references from which the ALJ could reasonably conclude that Debeikes tends to exaggerate the severity of her impairments. For example, in June 2002, Debeikes went to a hospital emergency room reporting that she had cut her finger and arm, but the urgent care staff found only a minimal abrasion without bleeding. Tr. 191. In January 2004, Debeikes reported that her right hip felt like it was down to "bone on bone," but diagnostic imaging showed no joint narrowing and her physical examination indicated a normal hip. Tr. 217. Debeikes alleged that her elbows were deteriorated and broken, but there is no medical evidence of any abnormality in her elbows.

The ALJ relied on the RFC assessment of the agency medical experts who reviewed the medical evidence in the record and opined that Debeikes retained the RFC to perform work requiring light exertion with climbing limited to an occasional basis. Tr. 198-202. These findings are not contradicted by any other medical source.

The ALJ pointed out that Debeikes did not stop working due to an impaired ability to perform work activities, but because she "became a housewife" and decided to cease work to raise her children. Tr. 75, 303. The ALJ also relied on the daily activities Debeikes reportedly pursues, including driving, cooking, shopping, caring for and home schooling three children and gardening. While these activities are not equivalent to full-time work, the ALJ could reasonably conclude that they are inconsistent with Debeikes's assertions that she is unable to stand more than five minutes or sit over 30 minutes at a time and that she must elevate her left foot all day and all night.

The ALJ considered proper factors and his credibility determination is supported by substantial evidence in the record as a whole, including the objective and clinical medical evidence, Debeikes's treatment history, the opinions of medical sources, her work history and her reported daily activities. The ALJ's findings are sufficiently specific to permit this court to conclude that he did not discount Debeikes's testimony arbitrarily. *Orteza v. Shalala*, 50 F.3d 750. In sum, the ALJ properly discounted Debeikes's assertion that her symptoms are so severe that she cannot perform her past work.

### II.     Bone Scan

As described previously, Debeikes underwent a bone scan on April 27, 2004 resulting in the impression that she had a stress fracture of one of the cuneiform bones of the left foot and mild arthritis in a joint of the big toe. Tr. 208. Debeikes contends the ALJ failed to give sufficient weight to this evidence.

Dr. Buuck reviewed the bone scan report but emphasized in his notes that the location of her pain did not correlate with the stress fracture described. He was certain, based on his clinical findings, that her pain was not related to a mid-foot stress fracture, but a product of her mild arthritis. Tr. 211-13.

Debeikes insisted on having a short cast applied and using crutches, although Dr. Buuck did not think she would benefit from this, because she had full range of motion in the ankle and benign clinical findings. When Dr. Buuck removed the cast several weeks later, Debeikes had full function in the ankle and foot and reported no pain over the previously tender area. Tr. 211.

The ALJ noted the bone scan results and reviewed Dr. Buuck's interpretation in detail. Although Debeikes disagrees with Dr. Buuck's interpretation, she does not provide contrary

9 - OPINION AND ORDER

evidence or any credible basis for discounting it. Dr. Buuck's opinion was completely consistent with the record as a whole and the ALJ's reliance on it was perfectly reasonable. Even if Debeikes could offer an alternative reasonable interpretation of the evidence, the court would not be entitled to substitute it for that of the Commissioner. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

### III.   Other Impairments

Debeikes argues that the ALJ failed to consider the following conditions: TMJ dysfunction, broken foot; broken jawbone; broken elbows; aching head, back and feet; heart problems; and fatigue. This argument is rejected.

The ALJ considered all the evidence of functional limitations. Debeikes did not identify medical evidence of a broken jawbone or broken elbows. There is no evidence of a health condition that could reasonably be expected to cause back pain or fatigue. The ALJ discussed in detail the evidence of arthritis and stress fracture in the left foot as described previously.

Debeikes complained of left ear pain and saw James Caro, M.D., in May 2004. Dr. Caro, an ear, nose and throat specialist, obtained completely normal results on his ENT examination, but noted a clicking sound in the left TMJ when Debeikes opened and closed her mouth. He suggested that her ear pain was related to TMJ dysfunction and provided an informational pamphlet. Tr. 210.

Debeikes testified that her ear pain was helped by wearing a mouth guard at night and observing a diet of soft foods. Tr. 304. There is no record that Debeikes sought or received any other treatment for ear pain. The ALJ considered this evidence and reasonably concluded that it failed to establish any impairment that could have a significant impact on Debeikes's ability to perform work activities. Tr. 16.

Debeikes testified that she has daily pain in her heart which she described as "more life threatening" and "worse than anything else." Tr. 288, 304. She had a normal EKG in March 2002. Tr. 188. In February 2003, she complained of occasional chest pains associated with stress which her physician interpreted as stress-related muscle spasm or chest pain. Tr. 206. In June 2004, her spirometry test of lung function was within normal limits. Tr. 240. Debeikes testified that Dr. Green later performed a repeat EKG which was also negative. Tr. 292.

The ALJ discussed the medical evidence from the treatment she received for chest pain and reasonably concluded that it did not support the existence of any impairment that would significantly affect her ability to perform basic work activities. Tr. 16.

To summarize, the ALJ considered all the evidence of functional limitations presented in the case record. His interpretation of that evidence is reasonable and must be upheld by the court. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

### IV.     Lay Witnesses

Debeikes asserts that the ALJ refused her request to take testimony at the hearing from her children. There is no mention of this request in the record. Debeikes has failed to identify evidence by which the court can evaluate this claim or present a basis upon which the court can grant her relief.

## **CONCLUSION**

Based on the foregoing, the ALJ's decision that Debeikes does not suffer from a disability and is not entitled to benefits under the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this   20th   day of June, 2006.


　　　　　　　　　　　　　　　　　　　　 /s/ Garr M. King
　　　　　　　　　　　　　　　　　　　　Garr M. King
　　　　　　　　　　　　　　　　　　　　United States District Judge